IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

```
KEVIN STACY                        )
                                   )
v.                                 )   No. 2:05-0041
                                   )   Judge Nixon/Brown
JO ANNE B. BARNHART, Commissioner  )
of Social Security                 )
```

To:  The Honorable John T. Nixon, Senior Judge

**REPORT AND RECOMMENDATION**

This is a civil action filed pursuant to 42 U.S.C. §405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits (DIB) and supplemental security income (SSI), as provided under Titles II and XVI of the Social Security Act, as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 11), to which defendant has responded (Docket Entry No. 15). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner be AFFIRMED.

**I. INTRODUCTION**

Plaintiff filed his applications for a period of disability, DIB, and SSI on July 9, 2003 (Tr. 58-62, 334-37). He received a protective filing date of June 26, 2003 (Tr. 333). In

1

these applications, plaintiff claimed that he became disabled on either January 5 or 12, 2003 (Tr. 60, 66, 76, 392). These applications were denied at the initial and reconsideration stages of agency review (Tr. 44-51, 54-55, 338-347). Plaintiff thereafter requested and received a hearing before an Administrative Law Judge ("ALJ") (Tr. 56-57, 389-407). Plaintiff was represented by counsel at the November 5, 2004 hearing, wherein plaintiff and a vocational expert ("VE") gave testimony.

On November 23, 2004, the ALJ issued a written decision, determining that plaintiff was not disabled (Tr. 16-28). The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's back pain, affective and anxiety related disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. His mental disorders impose no more than mild restrictions of activities of [daily living]; moderate ability to maintain social functioning, and moderate ability to maintain concentration, persistence, and pace. He has had no extended episodes of mental decompensation, and he functions adequately outside of a highly supportive setting.

5. The undersigned finds the claimant's allegations

2

regarding his limitations are not totally credible for
the reasons set forth in the body of the decision.

6. The claimant has the following residual functional
capacity: lift/carry 50 pounds on an "occasional" basis
and 25 pounds on a "frequent" basis; and stand, walk,
and/or sit about 6 hours each with normal breaks,
during an 8 hour workday. His mental impairments do
not preclude the claimant from more than complex or
detailed work-like procedures and instructions. He
could perform activities within a schedule, maintain
regular attendance, and be punctual within customary
tolerances. He has the ability to sustain an ordinary
routine without special supervision and could maintain
concentration. He could work in coordination with
and/or in proximity to others without being distracted
by them and could make simple work-related decisions.
He has the ability to complete a normal workday and
work week without interruptions from psychologically-
based symptoms and could perform at a consistent pace
without an unreasonable number and length of need to
rest periods. He has the ability to interact
appropriately with the general public and could ask
simple questions and request assistance. He could
accept instructions and respond appropriately to
criticisms and supervisors. He has the ability to get
along with co-workers without distracting them or
exhibiting behavioral extremes. He can maintain
socially appropriate behavior and adhere to basic
standards of neatness and cleanliness. He could
respond appropriately to changes in the work setting
and could be aware of normal hazards and take
appropriate precaution. He has the ability to travel
in unfamiliar places and could use public
transportations. He has the ability to set realistic
goals and make plans independently of others.

7. The vocational expert testified that the claimant was
unable to perform any of his past relevant work (20 CFR
§§ 404.1565 and 416.965).

8. The claimant is a "younger individual between the ages
of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

9. The claimant has "a limited education" (20 CFR §§
404.1564 and 416.964).

10. The claimant has no transferable skills from any past

relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow him to perform the full range of medium work, using Medical-Vocational Rule 203.26 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform, which has been enumerated in the body of this decision.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. 26-27).

On April 15, 2005, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr. 6-9), thereby rendering that decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II. REVIEW OF THE RECORD

Plaintiff was born in 1961 (Tr. 60, 334, 391) and was forty-three years old at the time of the November 23, 2004, hearing decision (Tr. 28). Plaintiff has an eleventh grade education (Tr. 72, 82, 392). Plaintiff worked in the past as a

4

shipping and receiving worker, molding plant worker, lumber stacker, press machine operator, department store supervisor and shipping/receiving worker, and steel slitter operator (Tr. 67, 77-78, 110-17, 137, 401-02). Plaintiff alleged he was disabled due to back, shoulder, and leg pain associated with a back injury and due to rheumatoid arthritis, panic attacks, and depression (Tr. 66, 76, 96-101, 120, 128, 393-400).

The medical evidence reveals that on January 28, 2000, plaintiff sought treatment at an outpatient clinic because of complaints of lower back pain (Tr. 270-71). He also had sinus and pharynx congestion (Tr. 270-71). In July 2000, plaintiff sought treatment a few times for a rash (Tr. 267-69). After ordering lipid panel lab testing in December 2001, the clinic physician noted that plaintiff had hyperlipidemia in addition to his rhinitis and hypertension (Tr. 263-65), which continued into early 2001 (Tr. 258-62). Clinic records also denote long term current use of medication, presumably as a factor causing the elevated lipid levels (Tr. 259-261,263).

Thereafter on August 27, 2001, plaintiff presented to the emergency room (ER) with complaints of lower back pain that had increased over the previous weekend (Tr. 196-200). The physician diagnosed lumbar strain and overexertion/strenuous movements (Tr. 199-200). He also instructed plaintiff about back care exercises and other modalities to improve pain (Tr. 197).

5

Plaintiff also reported back pain during an October 2001 clinic examination (Tr. 256-57).

A few weeks later on November 5, 2001, plaintiff felt as if his heart was racing, which the clinic physician diagnosed as sinus tachycardia (Tr. 254-55). When plaintiff presented to the ER a few days later complaining of an increased heart rate (Tr. 189-95), the ER physician determined that plaintiff had experienced an anxiety attack and unspecified tachycardia (Tr. 191, 193-94). Later that month and into December 2001, he had bouts of rhinitis/sinusitis and reported increased anxiety, initially associated with concerns about his sister being taken off life-support (Tr. 246-53). The clinic physician diagnosed neurotic depression and "anxiety states" (Tr. 248, 253). In mid-December 2001, plaintiff's cough and cold developed into bacterial pneumonia (Tr. 241-45). Plaintiff was improving at the time of a January 2002 clinic examination (Tr. 238-40). However, he continued to be diagnosed with hyperlipidemia, neurotic depression, and anxiety states later that month (Tr. 234-36).

On February 6, 2002, plaintiff presented to the ER with complaints of an inability to sleep, allegedly because of his medication, which the ER physician again diagnosed as a mild exacerbation of anxiety with insomnia (Tr. 183-88). The next day, plaintiff reported similar symptoms of increased anxiety at the outpatient clinic (Tr. 228-33). He complained of continued

6

cough and rhinitis later that month (Tr. 228-31). The clinic physician rated plaintiff's anxiety as intermittent, but recurrent, with moderate nervousness (Tr. 228). A few weeks later, plaintiff presented to the ER complaining of chest tightness, which the ER physician diagnosed as acute bronchitis (Tr. 176-82). Plaintiff was also diagnosed with painful respiration, tobacco use/abuse, cough, and essential hypertension (Tr. 182, 184). He reported mild panic attacks, moderate nervousness, and palpitations in March 2002 (Tr. 226-27). By April 2002, plaintiff reported that his depression had subsided and he indicated a desire to be weaned off his medication (Tr. 224-25); however, he had a recurrence of anxiety a week later (Tr. 222,23). In May 2002, plaintiff presented to the ER with cold chills, muscle aches, and headaches (Tr. 170-75). He had acute sinusitis, fever, cough, and essential hypertension (Tr. 174-75).

Plaintiff received chiropractic treatment from October 2001 to May 2002, more regularly in October, November, and December 2001 (Tr. 139-57).

During June and July 2002 follow-up evaluations at the outpatient clinic, plaintiff was again found to have hypertension and anxiety that caused insomnia, and he was later found to have elevated triglyceride levels and rhinitis (Tr. 216-21). He again had hyperlipidemia in August 2002 (Tr. 211-15). He also wanted

7

help to stop smoking in August 2002 (Tr. 211).

On August 30, 2002, plaintiff sought treatment in the ER because of a laceration in the left medial calf area caused by a box cutter (Tr. 164-69). The physician sutured the wound (Tr. 166, 169). The sutures were removed about a week later (Tr. 159-63).

In October and November 2002, plaintiff received treatment at the clinic for sinus congestion, which was found to be allergic rhinitis/acute sinusitis (Tr. 202-10). He also reported back pain in November 2002, which was initially thought to be lumbago but was later found to be spondylosis of an unspecified site with mention of myelopathy (Tr. 202-05).

From October 2003 to January 2004, plaintiff received mental health treatment on six occasions at Rumage Behavioral Health Services (Tr. 314-27, 330-32). Plaintiff's clinicians diagnosed him with depressive disorder, not otherwise specified, which was treated with Prozac and Xanax (Tr. 314, 317, 330). Plaintiff had a global assessment of functioning (GAF) as low as 45, that had been as high as 55 in the past year (Tr. 317, 327).

To develop the record, the Commissioner requested that plaintiff undergo a consultative psychological examination with Mary Kay Matthews, a master's level psychologist, which she performed under the supervision of Harry Steuber, Ph.D., on August 8, 203 (Tr. 273-79). Plaintiff had anxiety symptoms and

8

Case 2:05-cv-00041   Document 16   Filed 03/06/06   Page 8 of 20 PageID #: 55

reported activities that Ms. Matthews believed suggested obsessive-compulsive disorder (Tr. 275-76). Ms. Matthews and Dr. Steuber diagnosed plaintiff with obsessive compulsive disorder and major depressive disorder, single episode, severe without psychotic features (Tr. 278). They indicated plaintiff's GAF was then 55 (Tr. 278). They further assessed that plaintiff could appropriately relate to others, either in public or privately, and could manage his own funds, if awarded (Tr. 277). They also felt that plaintiff could mentally handle simple, and possibly more detailed work procedures and instructions, remember locations, maintain a schedule and regular attendance, be punctual, sustain an ordinary routine, maintain concentration, work in coordination and in close proximity to others, make simple work-related decisions, complete a normal workday and workweek without interruptions, and perform at a consistent pace without an unreasonable amount of or length of breaks (Tr. 277). Plaintiff also could interact appropriately with the general public, ask questions and seek assistance, accept instruction, and respond appropriately to criticism (Tr. 277-78). He also had the ability to get along with co-workers, had no behavioral extremes, could maintain socially acceptable behavior, could adhere to basic standards of cleanliness and neatness, could respond appropriately to changes in the workplace, and could be aware of normal hazards and take appropriate precaution, could

9

travel to unfamiliar locations and use public transportation, and could set realistic goals and make plans independently of others (Tr. 278).

In September 2003, Dr. Melvin Blevins evaluated plaintiff's physical condition at the request of the Commissioner (Tr. 298-303). Plaintiff's back examination indicated some tenderness, but anatomically appeared normal (Tr. 299). Dr. Blevins also found plaintiff with some range of motion limitation of the back, neck, and shoulders (Tr. 302). He diagnosed plaintiff with degenerative lumbar disc disease, osteoarthritis, suspected rheumatoid arthritis, and musculoskeletal pain disorder (Tr. 301).

State Agency medical experts assessed plaintiff's physical and mental capacity at the initial consideration of plaintiff's claim (Tr. 280-97, 304-11). One expert physician assessed that plaintiff had depressive and anxiety symptoms that resulted in mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, but never caused extended episodes of decompensation (Tr. 290). Plaintiff was not significantly limited in most work-functional areas except that he had moderate limitations in the ability to maintain attention and concentration, complete a normal workday and workweek, to interact appropriately with the public, get along with and work

around co-workers, and respond appropriately to supervision (Tr. 294-97). Another State Agency medical expert assessed that plaintiff had the capacity to perform the full range of medium work from a physical standpoint (Tr. 304-11).

As summarized by the ALJ, plaintiff's hearing testimony consisted of the following:

> The claimant testified that he has low back pain with numbness and tingling in his legs mostly everyday. He opted for no back surgery. While unloading boxes at his last employment in December 2003, he hurt his back. His company authorized medical leave and gratuity until recently. Prescribed medications relieve his pain, somewhat. He can walk; stand and or sit, at least 30 minutes, and lift about 20 pounds. He reported that bending, stooping and squatting were hard. He smokes approximately one pack of cigarettes a day. He reported that concentration was sometimes a problem. He is able to take care of his personal needs such as showering. He does not cook but will fix sandwiches. He mostly lies on the couch during the day.

(Tr. 20-21).

### III. CONCLUSIONS OF LAW

#### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Secretary, 803

11

F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Commissioner, 203 F.3d 388, 389 (6th Cir. 1999)(citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Commissioner, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. Hurst v. Secretary, 753 F.2d 517, 519 (6th Cir. 1985).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process, as follows:

12

(1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
(2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.
(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
(5) Once the claimant establishes a prima facie case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid can not be used to direct a conclusion, but only as a guide to the disability determination.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

13

Id. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. See Varley v. Secretary, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement of Errors

Plaintiff alleges that the ALJ erred in (1) rejecting the opinion of his treating psychiatrist, Dr. Jeffrey Belknap; (2) failing to find disability under §§ 12.04 and/or 12.06 of the Listings; and (3) inaccurately portraying his mental impairments in the ALJ's hypothetical questioning of the VE. As stated below, the undersigned finds no error in the ALJ's decision.

With respect to plaintiff's first argument, it bears noting that plaintiff's counsel appears to have confused his providers. Dr. Jeffrey Belknap is plaintiff's primary care physician (Tr. 129), an internist who on this record does not

14

appear to have treated plaintiff's mental conditions.  The
records which counsel cites in support of his first argument,
which appear to be the only records from any treating mental
health specialists, are from Rumage Behavioral Health Services
("Rumage"), where plaintiff's primary clinician appears to have
been April Rumage, APRN, BC (Tr. 312-327, 330-32).  The other
clinician who has seen plaintiff at that facility, and who
appears to have done his initial psychiatric evaluation and
several of his GAF assessments, is Laura Beckwith, APRN.  The
designation "APRN" appears to stand for "Advanced Practice
Registered Nurse."[2]  While defendant seems to believe that
plaintiff's treating physician at Rumage was Dr. Cynthia Rector,
the record reveals that Dr. Rector's only involvement with
plaintiff was as one of the writers of his mental health-related
prescriptions, along with Ms. Rumage and Ms. Beckwith (Tr. 314,
330).  Thus, as an initial matter, it does not appear that the
findings and conclusions which the ALJ is alleged to have given
short shrift were in fact those of a treating psychiatrist.

     Mental health care professionals who are not licensed
physicians or psychologists are not "acceptable medical sources"
under the regulations for purposes of establishing the existence
of an impairment, but are "other sources" whose opinions may be
considered in gauging the severity of established impairments.

---

[2] http://www.scnurses.org/A_P_Council/aprns.asp

15

Case 2:05-cv-00041   Document 16   Filed 03/06/06   Page 15 of 20 PageID #: 62

20 C.F.R. § 404.1514. "Other sources" include nurse-practitioners and therapists, 20 C.F.R. § 404.1514(d)(1), and presumably APRNs as well. By regulatory definition, the requirements that all "medical opinions" be considered, 20 C.F.R. § 404.1527(d), and that good reasons be given if the "medical opinion" rejected is that of a treating source, 20 C.F.R. § 404.1527(d)(2), extend only to the opinions of "acceptable medical sources." 20 C.F.R. § 404.1527(a)(2). Accordingly, plaintiff's argument under the treating physician rule and <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541 (6th Cir. 2004), is unavailing as applied to the GAF assessments and other opinions of the APRNs at Rumage. <u>E.g.</u>, <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F.3d 525, 530-31 (6th Cir. 1997).

Regardless of the degrees held by plaintiff's treating sources at Rumage, defendant correctly notes that their GAF assessments, while twice including a current score of 45 denoting serious symptoms, also included scores within the past year of 55 indicating only moderate symptoms (Tr. 317, 327), which coincides with the GAF assessment of the consultative examiner a few months earlier (Tr. 278). Though the Rumage progress notes from October 2003 to January 2004 consistently reflect a GAF score of 50 (Tr. 315-322, 331-32), at the upper end of the range denoting serious symptoms, the ALJ evidently believed that those scores indicating moderate symptoms were consistent with the observations and other

16

conclusions of the consultative examiner (Tr. 23-24), as well as the Rumage staff's notations in late 2003-early 2004 that plaintiff was less depressed, that his depression and anxiety were only "mild," that he was getting out more, and that he was able to travel (Tr. 22, 322, 331).  Due to this conflict in the medical evidence and some degree of internal inconsistency in the progress notes from Rumage, the undersigned cannot find error in the ALJ's adoption of the consultant's assessment of mental health-related limitations over the more restrictive GAF assessments of his clinicians at Rumage.

As to plaintiff's second argument, it is clear that regardless of whether his anxiety or affective disorders meet or equal the diagnostic description and medical documentation criteria of listings 12.04 and 12.06, those listings both require a resulting functional impact[3] that has not been demonstrated on this record.  The ALJ explicitly considered the functional criteria of these listings and found that they had not been satisfied (Tr. 25, 26 [finding no. 4]).  While plaintiff points to his GAF of 45 to 50 as supporting a finding of listing-level

---

[3] In addition to the clinical criteria which support the diagnoses under listings 12.04 and 12.06, the record must also show that the condition results in "at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).  Alternatively, the appropriate level of functional loss may be shown by demonstrating essentially an inability to function independently outside the home.  Compare § 12.04(C) with § 12.06(C).

17

Case 2:05-cv-00041   Document 16   Filed 03/06/06   Page 17 of 20 PageID #: 64

functional impairment, the ALJ did not credit these GAF assessments, but as discussed above, adopted the consultant's assessment in finding that plaintiff suffered only moderate functional loss as a result of his mental impairments. Plaintiff has not shown that he meets the criteria of any listed impairment, and the undersigned finds no error in the ALJ's step three analysis.

Finally, plaintiff contends that the ALJ's hypothetical question to the VE did not accurately portray his limitations, specifically his need to nap during the day and the functional limitations assessed by the consultative psychological examiners and non-examining state agency consultant (Tr. 290). However, the ALJ's hypothetical (Tr. 403-04) accurately reflected the limitations he found to be credible based on the medical and other evidence, as well as plaintiff's demeanor during the hearing (Tr. 22-24). The ALJ obviously did not credit plaintiff's testimony that he was required to take naps during the day to compensate for lost sleep at night. Moreover, both the state agency consultant's assessment of moderate limitations in maintaining social functioning and concentration, persistence or pace, and mild restriction in daily activities, and the consultative examiner's GAF assessment of 55, easily square with the ALJ's hypothetical description of a person who is "able to perform simple, routine and repetitive tasks"; whose

18

"concentration, persistence and pace is limited, but adequate"; who "should not [have] other than superficial contact with the public" but "would do better working with things rather than the public"; and who would be able to "adapt to moderate levels of stress" (Tr. 404). In view of the deference due the ALJ's credibility determination, <u>Buxton v. Halter</u>, 246 F.3d 762, 773 (6th Cir. 2001), and the inclusion of hypothetical limitations in his question to the VE which accurately reflect plaintiff's RFC and other vocational factors, the undersigned finds no error in the ALJ's use of the resulting testimony to carry his step five burden.

### IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further

19

Case 2:05-cv-00041 Document 16 Filed 03/06/06 Page 19 of 20 PageID #: 66

appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 7th day of March, 2006.

                                                  /s/ Joe B. Brown
                                                  JOE B. BROWN
                                                  United States Magistrate Judge

20

Case 2:05-cv-00041   Document 16   Filed 03/06/06   Page 20 of 20 PageID #: 67